IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PRIMAX RECOVERIES, INC.              )
                                     )
v.                                   )    NO. 3:02-0240
                                     )
JOAN GUNTER and WILLIAM GUNTER       )


TO:   The Honorable Todd J. Campbell, Chief Judge


**REPORT AND RECOMMENDATION**

By order entered June 21, 2006 (Docket Entry No. 144), the defendants' supplemental application for attorneys fees (Docket Entry No. 99) was referred to the Magistrate Judge.

**I. BACKGROUND[1]**

The plaintiff instituted this action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), to recover payments for medical benefits paid on behalf of the defendants. The defendants are "covered persons" under the Northern Telecom, Inc. Health and Welfare Plan (the "Plan"), which is an ERISA covered, self-funded plan, underwritten through CIGNA Healthcare ("CIGNA"). The plaintiff, Primax Recoveries, Inc., was authorized by CIGNA to administer and prosecute all of CIGNA's rights and claims for subrogation under the Plan.

On October 24, 1999, the defendants, Joan and William Gunter, were involved in an automobile accident and sustained serious injuries when the car in which they were driving was

---

[1] The underlying facts set forth herein are generally those recounted in the memorandum entered April 1, 2003 (Docket Entry No. 49), and the Report and Recommendation entered August 27, 2004 (Docket Entry No. 80).

struck by a car driven by Keith Etter. In the car with the defendants were the defendants' friends, Martin and Virginia O'Haver. The accident was determined to be caused by the negligence of Mr. Etter when he failed to stop at a flashing red light.

The Plan eventually paid $75,477.68 in benefits on behalf of the defendants, specifically, $281.60 in medical expenses on behalf of Mr. Gunter and $75,196.08 in medical expenses on behalf of Mrs. Gunter. Mr. Gunter's primary insurance carrier, United Healthcare Insurance Company, also made payments on behalf of the defendants for health benefits.

State Farm Mutual Automobile Insurance Company, Mr. Etter's insurance company, paid the defendants and the O'Havers $100,000.00, the coverage limits under Mr. Etter's policy. The defendants and the O'Havers agreed to divide this amount equally. In September of 2000, the defendants' underinsured/uninsured motorist carrier, Grange Mutual Casualty Company ("Grange"), paid the defendants and the O'Havers a total of $200,000.00, which was also divided equally between the defendants and the O'Havers. In January of 2001, Grange paid the defendants and the O'Havers an additional $100,000.00, the amount remaining under the policy limits. Again, the defendants and the O'Havers divided this amount equally, although the defendants incurred approximately $12,500.00 in attorney fees relating to their recovery of the $50,000.00 received from Grange.

The plaintiff filed this action on March 8, 2002, seeking recovery of the $75,477.68 paid on behalf of the defendants for medical benefits.[2]

The parties filed cross motions for summary judgment on January 24, 2003 (Docket Entry Nos. 28 and 31). The plaintiff argued that it was entitled to restitution, without regard to the make-whole rule, because the defendants voluntarily reached a settlement in which the plaintiff did not

---

[2]Simultaneously with the filing of the complaint, the plaintiff also filed a motion for a temporary restraining order ("TRO"), which was granted ex parte by order entered March 11, 2002 (Docket Entry No. 9), enjoining the defendants from dissipating the funds received from the plaintiff. By agreed order entered March 19, 2002 (Docket Entry No. 12), the TRO was dissolved and the defendants were ordered to preserve the funds in the amount of $35,070, that remained in their bank account.

2

participate and the defendants failed to give the plaintiff an opportunity to reject any settlement offers.

By order and memorandum entered April 4, 2003 (Docket Entry Nos. 49-50), the Court found that the voluntary settlement of the defendants' claims did not bar the application of the make-whole rule. However, the Court found that the parties had not adequately briefed the issue of whether the defendants were made whole. The Court directed the parties to supplement their briefs in support of their respective motions with supporting facts on the issue of whether the defendants had been made whole.

In their supplemental briefs (Docket Entry Nos. 54 and 62), the defendants asserted that they received a total net payment of $156,500.00, from all insurance proceeds, not including unreimbursed medical expenses and out-of-pocket expenses. Docket Entry No. 54, at 11.[3] They also submitted affidavits, attesting that they sustained severe and permanent injuries as a result of the accident, and that they paid approximately $3,200.00 in out-of-pocket expenses. Docket Entry No. 64, at 2. In addition, the defendants asserted that, under Tennessee law and based on the affidavit of their former attorney, who represented them and the O'Havers in the settlement of their claims, they could have expected to receive damages in the range of $750,000.00 to $1,500,000.00 at trial. See Docket Entry No. 58.

The plaintiff contended that the defendants had received a net amount of at least $385,000.00,[4] and that they had been made whole. See Docket Entry No. 59, at 2; Docket Entry No. 64, at 2. However, the Court found that the plaintiff did not submit any proof to substantiate that contention. Docket Entry No. 64, at 4. The Court further found that the plaintiff had offered no proof to rebut the defendants' affidavits that the injuries they sustained in the accident resulted in permanent injuries and that they continue to endure pain and discomfort as a result. Id. at 4-5.

---

[3]The defendants received total proceeds of $200,000.00, but the defendants reduced that amount by a $31,000.00 payment for a subrogation lien asserted by United Healthcare, and $12,500.00 in attorneys fees and expenses.

[4]This amount includes $243,420.00 in medical benefits paid on behalf of the defendants.

3

Given the plaintiff's "failure to present any evidence to rebut the proof offered by Defendants that they have not been made whole," the Court found that the defendants were entitled to retain the preserved funds in dispute. Docket Entry No. 64, at 5. Accordingly, by order entered December 5, 2003 (Docket Entry No. 65), the Court denied the plaintiff's motion for summary judgment, and granted the defendants' cross motion for summary judgment.

Thereafter, the defendants filed a motion for attorneys fees (Docket Entry No. 66), seeking $72,519.46, in fees and expenses incurred in successfully defending this action. The defendants argued that they were entitled to recover attorneys fees and costs incurred in connection with the successful defense of the claims, pursuant to section 502(g) of ERISA, 19 U.S.C. § 1132(g), which provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In accord with the Court's order entered March 23, 2004 (Docket Entry No. 76), defendants' counsel filed a more detailed version of their billing records.

By Report and Recommendation ("R&R") entered August 27, 2004 (Docket Entry No. 80), the Court applied the factors set forth in Secretary of Dep't of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985), considered the plaintiff's specific objections to the fees sought, and recommended that the Court award the defendants $67,255.46 in fees and expenses.

Between the time the parties briefed the defendants' application for attorney fees and the time the R&R was entered, the Court of Appeals for the Sixth Circuit decided QualChoice, Inc. v. Rowland, 364 F.3d 638 (6th Cir. 2004), in which the Court held that this Court lacked subject matter jurisdiction over a claim filed by the fiduciary and administrator of an ERISA plan to obtain reimbursement. Relying upon QualChoice, the plaintiff filed a motion for de novo review (Docket Entry No. 81) of the R&R, contending that this Court did not have subject matter jurisdiction over the plaintiff's claim and thus also lacked jurisdiction to award attorneys fees.[5]

---

[5] The plaintiff did not raise the issue of lack of subject matter jurisdiction or bring the QualChoice decision of May 11, 2004, to the Court's attention until after the R&R was entered on August 27, 2004.

4

The Court agreed with the plaintiff, and, by order entered September 29, 2004 (Docket Entry No. 85), rejected the R&R and denied the defendants' application for attorneys fees. The Court noted, however, that, if the Court had subject matter jurisdiction, the Court would have adopted and approved the R&R and awarded defendants $67,255.46 in fees and expenses. Docket Entry No. 85, at 2, n.2. By order entered October 15, 2004 (Docket Entry No. 88), the Court denied the defendants' motion (Docket Entry No. 86) to alter or amend the September 29, 2004, order, and the defendants appealed the September 29, 2004, and October 15, 2004, orders. See Docket Entry No. 89.

On January 12, 2006, the Court of Appeals for the Sixth Circuit reversed and remanded for further consideration of the defendants' request for attorney's fees and costs. See Primax Recoveries, Inc. v. Gunter, 433 F.3d 515 (6th Cir. 2006). The Court of Appeals reversed its prior ruling in QualChoice in light of the intervening United States Supreme Court cases of Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), and Eberhart v. United States, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam), and held that, although the plaintiff had failed to state a claim upon which relief could be granted, the Court, in fact, had subject matter jurisdiction over the plaintiff's claims and therefore had subject matter jurisdiction over the defendants' request for attorney's fees and costs. See also Sereboff v. Mid-Atlantic Med. Servs., Inc., __ U.S. __, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). In remanding this case, the Court of Appeals specifically held that "the District Court may exercise its discretion in granting the Gunters' application for attorney's fees and costs, as the Court indicated it would have done with subject matter jurisdiction." (emphasis added). Thus it appears that the Court of Appeals fully expected that this Court would award fees to the defendants.

The mandate of the Court of Appeals issued on April 20, 2006, and, by order entered April 24, 2006 (Docket Entry No. 95), the parties were directed to file any supplemental documents, if necessary, relating to the defendants' application for attorneys fees.

5

After a brief extension of time, see Docket Entry Nos. 96-97, the defendants filed a supplemental motion for attorney fees (Docket Entry No. 99), and accompanying memorandum and declaration (Docket Entry Nos. 100-101). After obtaining another extension of time, to which the defendants objected, see Docket Entry Nos. 98, 102 and 103, the plaintiff filed a response to the defendants' supplemental motion and objection to the August 27, 2004, R&R (Docket Entry No. 105), to which the defendants filed a reply and response, respectively (Docket Entry Nos. 109-110), along with another declaration of counsel (Docket Entry No. 111).

## II. OBJECTIONS TO THE REPORT AND RECOMMENDATION

The R&R was entered August 27, 2004 (Docket Entry No. 80). By its terms and pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the plaintiff had ten (10) days from service of the R&R to file objections to the R&R. In its motion and memorandum for de novo determination timely filed on September 13, 2004 (Docket Entry Nos. 81 and 82), the plaintiff addressed the Court's lack of subject matter jurisdiction in accord with QualChoice, but did not otherwise address the merits of the R&R.

By its order entered April 26, 2006 (Docket Entry No. 95), the Court permitted the parties to file "any supplemental documents, if necessary, in regard to [the defendants'] Application for Attorneys Fees . . . ." (emphasis added). In compliance with that order, the defendants filed their supplemental motion for attorneys fees, and the plaintiff filed an objection to the August 27, 2004, R&R and response to the defendants' supplemental motion (Docket Entry No. 105).

Thus, the defendant filed objections to the August 27, 2004, R&R almost two years after the R&R was entered. There is nothing in these objections that could not have been timely raised in objections filed within ten days of service of the R&R. It does not appear that the Court intended to permit the plaintiff to file untimely objections. In any event, by its referral order (Docket Entry No. 114), the Court only referred the defendants' supplemental application (Docket Entry No. 99) to the Magistrate Judge for a Report and Recommendation.

6

Therefore, it does not appear that the plaintiff's objections, incorporated into the same document as its response to the defendants' supplemental application, are before the Magistrate Judge for consideration.

### III. DEFENDANTS' SUPPLEMENTAL APPLICATION

By their supplemental application (Docket Entry No. 99), the defendants seek an award of $130,519.91, which includes $59,281.25 in attorneys fees and $2,277.95 in expenses for a total of $61,559.20, for the period August 1, 2003, through May 31, 2006. See Docket Entry No. 101, at 2, ¶¶ 4-5. In their reply and counsel's declaration (Docket Entry Nos. 110-111), the defendants seek an additional $6571.28 for fees and expenses incurred since the initial supplemental application was filed. Thus, the defendants no longer seek $130,519.91, but $137,091.19.

The defendants initially sought $72,519.46 in fees, including $69,019.46 in fees and expenses through July 31, 2003, and an additional $3500.00 in fees and expenses incurred in connection with the preparation of the original application. See Docket Entry No. 77, at 2, ¶¶ 3-4. The $3500.00, which the defendants represented was incurred in the connection with the preparation of the original application for fees and expenses, was addressed by the Court in the August 27, 2004, R&R.[6] Therefore, the Court will reduce the $61,559.20 by $3500.00. In addition, by the August 27, 2004, R&R, the Court recommended that the defendants be awarded $67,255.46 of the $72,519.46 requested. Thus, the $137,091.19 should also be reduced by $72,519.46.

---

[6]In support of their original application, the defendants submitted billing records for the period of time ending July 31, 2003. Exhibit 1 to Docket Entry No. 77. In addition, the defendants sought $3,500.00 in attorneys fees and expenses "incurred in connection with the portion of [that] application . . . . " Docket Entry No. 77, at 2. In support of their supplemental application, the defendant submitted billing records for the period of time December 23, 2003, through May 26, 2006, Docket Entry No. 101-2, in addition to the $6571.28 requested for matters not yet billed as of the date of the supplemental application. See Docket Entry No. 111, at 2. The Court notes that the amounts reflected on the billing statement (Docket Entry No. 101-2) for the period of time from December 23, 2003, through April 8, 2004, the date the defendants filed their supplemental appendix seeking the additional $3500.00 (Docket Entry No. 77), exceed $3500.00.

7

Therefore, after the above deductions and the addition of the $6571.28, the amount at issue in attorneys fees and expenses, not already addressed in the August 27, 2004, R&R, is $61,071.73.

The plaintiff has not objected to defendants' counsel's hourly rates or to the amount of hours spent. Instead, the plaintiff contends that the defendants are not entitled to any attorneys' fees or costs related to the appeal, citing Schwartz v. Gregori, 160 F.3d 1116, 1120 (6th Cir. 1998), in support of its position that the factors enunciated in Secretary of Dep't of Labor v. King, 775 F.2d 666 (6th Cir. 1985), must be analyzed separately for the appeal.

The factors to consider in awarding attorney's fees are (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' position. King, 775 F.3d at 669. No single factor is determinative. Foltice v. Guardsman Prods., Inc., 98 F.3d 933, 936 (1996), cert. denied, 520 U.S. 1143, 117 S.Ct. 1312, 137 L.Ed.2d 475 (1997). In fact, the Court of Appeals has described the King factors as "typically not dispositive" and "considerations representing a flexible approach." Moon v. UnumProvident Corp., 461 F.3d 639, 643 (6th Cir. 2006); First Trust Corp. v. Bryant, 410 F.3d 842, 851 (6th Cir. 2005).

The defendants describe as "disingenuous" the plaintiff's argument that, in considering applications for attorneys fees related to an appeal, Schwartz used an analysis of the King factors related to the appeal rather than to the case before the District Court. Docket Entry No. 110, at 7. The Court agrees with the defendants that the Court of Appeals reviewed the denial of attorney's fees in Schwartz for abuse of discretion, and perhaps the suggestion that the Court of Appeals "conducted" a de novo King-factor analysis, see Docket Entry No. 105, at 13, was not artfully made. However, the clear import of the plaintiff's argument is that Schwartz mandated that the King factors must be applied to the appeal when the Court considers an application for fees on appeal. The Court agrees that Schwartz so requires.

8

1. Bad Faith/Culpability

The plaintiff contends that there was no bad faith or culpability on the part of the plaintiff, who prevailed in this Court and who defended the appeal brought by the defendants. In addition, the plaintiff argues that the relative merits of the parties' positions weighs in favor of the plaintiff since the plaintiff's position on appeal was consistent with the holding in QualChoice. Therefore, it is the plaintiff's position that neither the factors of culpability/bad faith or deterrence weigh in favor of an award of fees. The Court previously found that the common benefit factor did not weigh in defendants' favor. See Docket Entry No. 80, at 11.

The landscape on appeal changed dramatically from that presented to this Court. The issue ultimately resolved was whether this Court had jurisdiction over the plaintiff's claim and over the defendants' request for attorney fees. Although the defendants had raised the jurisdictional issue, see Docket Entry Nos. 40 and 51, the thrust of the issue before this Court was whether the defendants had been made whole by the payment of the settlement proceeds. It is that issue that was pivotal to the Court's decision granting summary judgment for the defendants. See Docket Entry Nos. 64-65.

In the August 27, 2004, R&R, the Court applied the King analysis to this case as it existed after the entry of summary judgment for the defendants and relied in part on the Court's finding that the plaintiff presented no evidence to dispute any evidence of wrongdoing on the defendants' part, that the evidence indicated that the prejudice to the plaintiff resulted from the plaintiff's own failure to actively pursue the information the defendants provided, and that the plaintiff failed to present evidence to rebut the defendants' proof that they had not been made whole. Docket Entry No. 49, at 10-11. Coupled with the fact that the defendants had notified the plaintiff of case law that directly contradicted its position prior to the filing of the lawsuit, the Magistrate Judge found that, at a minimum, the plaintiff's actions constituted indifferent disregard of the defendants' interest. See Docket Entry No. 80, at 9.

9

The defendants now accuse the plaintiff of "flip flopping" on its position on whether this Court has jurisdiction over the claim in this action. See Docket Entry No. 110, at 3, 5. Having asserted that the Court had jurisdiction to pursue its claim against the defendants, once the plaintiff faced a recommendation that it pay defendants' attorneys fees, the plaintiff then took a reverse turn and asserted that the Court did not have jurisdiction over the original claim and thus had no jurisdiction over the defendants' request for attorneys fees. However, to hold plaintiff's counsel to a standard of divining that the Court of Appeals would hold that there was no subject matter jurisdiction is too high a standard. Once the Court of Appeals ruled in QualChoice that there was no subject matter jurisdiction, the plaintiff had every right to assert that there was no jurisdiction over both the plaintiff's claims and the defendants' request for attorney fees in this case. Therefore, it is not reasonable to expect the plaintiff to anticipate that the law would change as dramatically as it has and not reasonable to accuse the plaintiff of "flip flopping" simply because the plaintiff changed its position as a result of intervening case law. The Court cannot find that such a change in its position exemplifies culpability.[7]

The defendants also accuse the plaintiff of "intentionally and unnecessarily" increasing the fees and costs incurred by the defendants on the appeal and post-appeal proceedings. Docket Entry No. 110, at 3-5. Specifically, the defendants refer to the plaintiff's objection to the August 27, 2004, R&R, filed a year and a half after the objections were time barred, to which the defendants were forced to respond, the fact that the plaintiff sought a rehearing and rehearing en banc before the Sixth Circuit, despite clear precedent from the United States Supreme Court supporting the original panel's decision,[8] and the fact that the plaintiff sought an extension of time to make its supplemental

---

[7]In fact, in analyzing the relative merits of the parties, the defendants concede that both parties had legal authority to support their positions on appeal. See Docket Entry No. 110, at 7.

[8]It does not appear that the defendants incurred anything but minimal attorney's fees related to the petition for rehearing en banc. The defendants' billing statement reflects only a .40 hour review of the petition and no filings made by the defendants related to the petition. See Docket Entry No. 101-2, at 9. The docket sheet for the Court of Appeals confirms that the defendants made no filings related to the plaintiff's petition for en banc hearing.

10

filings under the guise that the plaintiff wanted more time to explore settlement, when no overture about settlement was ever made to the defendants. Docket Entry No. 110, at 3-4.

Although the Court agrees with the defendants that the plaintiff's objections to the August 27, 2004, R&R were time-barred, the Court cannot find that seeking a rehearing or seeking an extension of time[9] is tantamount to bad faith or culpability.

Thus, the Court cannot find that the plaintiff acted in bad faith, with culpability, or even with indifferent disregard in defending the appeal in this case.

### 2. Ability to Satisfy Award

As the Court found in the August 27, 2004, R&R, it is undisputed that the plaintiff is clearly more capable of satisfying an award of attorneys fees.

### 3. Deterrence

The defendants argue that an award of fees will serve as a deterrent to other ERISA plans or entities acting on their behalves against bringing meritless litigation, asserting jurisdiction and then "flip flopping" when it serves their interests, and from needlessly increasing litigation costs. The Court has already addressed the defendants' claims of "flip flopping" and "needlessly" increasing the costs of litigation. The deterrent effect of initially bringing this lawsuit was addressed in the original R&R and is not at issue in considering the appeal. In a broader sense, however, the plaintiff and all other ERISA health and welfare plans may be, in effect, deterred from bringing reimbursement actions against plan participants. However, that deterrence is largely as a result of the Sixth Circuit and United States Supreme Court decisions, in which the defendants had no role. The only possible deterrent effect that the defendants accomplished is that, if an ERISA health and

---

[9]It may be that plaintiff's counsel wanted additional time to explore the possibility of settlement with the plaintiff and that such attempts by plaintiff's counsel were unsuccessful. The record is simply devoid of any explanation for plaintiff's basis for seeking an extension of time, but the Court is not willing to attach a mendacious motivation to plaintiff's counsel.

11

welfare fund seeks reimbursement from a plan participant, attorneys fees could be imposed against the Plan for filing such an action that fails to state a claim.[10]

### 4. Common Benefit/Significant Legal Questions

The fourth King factor is whether the party requesting fees sought to confer a common benefit on all plan participants and beneficiaries or sought to resolve significant legal questions regarding ERISA. Although the defendants did not seek to confer a benefit on other plan participants or beneficiaries by prosecuting the appeal in this case, the effect of the appeal did accomplish that result. The end result of defendants' appeal was the resolution of a significant legal issue. The Court of Appeals decision in this case is significant in that it overruled its prior ruling in QualChoice, in which the Court found that there was no subject matter jurisdiction over reimbursement claims. However, neither the lawsuit nor the appeal was instituted for the purpose of resolving any significant legal issue. On appeal, the ultimate relief the defendants sought was an award of attorney's fees. See Moon v. Unum Provident, 461 F.3d 639, 645 (6th Cir. 2006).

### 5. Relative Merits

Although the defendants argue that the relative merits of the parties' positions favors the defendants since they prevailed on appeal, the defendants concede that this factor is "probably less signficant" than the other King factors because both sides had legal authority to support their positions on appeal. Docket Entry No. 110, at 7. The plaintiff prevailed in this Court, the defendants appealed, the plaintiff defended the appeal, and the defendants ultimately prevailed on appeal. Under these circumstances, the Court cannot find that the factor of the relative merits of the appeal weighs in favor of the defendants.

---

[10] However, in Sereboff v. Mid-Atlantic Med. Servs., Inc., _ U.S. _, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), the Supreme Court categorized as seeking equitable relief the ERISA fiduciary's claim for reimbursement of medical expenses when the plan beneficiaries had preserved specifically identifiable funds from the settlement in an investment account. Thus the ruling on appeal in this case may not preclude all future reimbursement claims by plan fiduciaries.

12

## V. CONCLUSION

Having considered all of the King factors in regard to the appeal, the Court cannot find that, except for the plaintiff's clearly greater ability to satisfy the award, they weigh in favor of the defendants. The defendants argue that denial of their attorneys fees, including those fees associated with the appeal, would be "unjust and would ignore the remedial purpose of ERISA . . . ." Docket Entry No. 100, at 5. The Court agrees with the defendants that the appeal was absolutely necessary to vindicate their rights. However, the Court of Appeals for the Sixth Circuit has clearly held that the section 502(g) of ERISA is not a fee-shifting or prevailing party rule, and should be applied after analysis of appropriate factors, whether or not the King factors are the exclusive considerations. Were the standard otherwise, the Court would hold otherwise. However, the Court is constrained by the clear rulings of this Circuit to find that the defendants are not entitled to an award of attorney's fees for the work performed on appeal. On the other hand, the Court finds that the defendants are entitled to an award of attorney's fees for the work incurred prior to the entry of the August 27, 2004, R&R, in preparing and supporting the first motion for attorney's fees and expenses that were not considered by the Court in the August 27, 2004, R&R.

Specifically, the defendants have listed $13,376.25, in attorneys' fees for the time period December 23, 2003, through April 8, 2004, related to their first application for attorneys fees and expenses.[11] Docket Entry No. 101-2, at 3-4. Deducting $3500.00 from that amount that was already considered in the August 27, 2004, R&R, the defendants incurred $9,876.25 that was not addressed in the previous R&R.

For the same reasons addressed in the August 27, 2004, R&R, the defendants should be awarded an additional $9876.25.

---

[11] The defendants do not specify when expenses were incurred so it is not possible to determine whether any of the listed expenses were incurred during the period of time from December 23, 2003, through April 8, 2004.

13

## VI. RECOMMENDATION

Based on the reasons provided above, the Court recommends that:

1. The Report and Recommendation entered August 27, 2004 (Docket Entry No. 80) be reconsidered in light of the remand by the Court of Appeals and adopted, and that the defendants be awarded $67,255.46 in fees and expenses as recommended in that Report and Recommendation;

2. The defendants' supplemental application for attorneys fees (Docket Entry No. 99) be GRANTED in part and DENIED in part; and

3. The defendants be awarded an additional $9876.25 in fees against the plaintiff.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice, and must state with particularity the specific portions of this Report & Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).[12]

Respectfully Submitted.

*Juliet Griffin*
JULIET GRIFFIN
United States Magistrate Judge

---

[12] Citing Massey v. City of Ferndale, 7 F.3d 506, 508 (6th Cir. 1993), the plaintiff categorizes a motion for attorney fees and costs as a non-case dispositive matter. However, the page to which the plaintiff referred recites the opinion of the District Court, which the Court of Appeals rejected. In fact, in Massey, the Court of Appeals held that motions for sanctions, fees and costs are dispositive, rather than non-dispositive. In addition, the motion in the instant case, as in Massey, was a post-judgment matter, rather than a pretrial matter and thus the standard of review is not "clearly erroneous" as it would be for a pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A). Instead, the review by the District Judge of a Report and Recommendation is de novo pursuant to 28 U.S.C. § 636(b)(1)(B).